IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:17-cv-02671-TLP-dkv |
| v. | ) | |
| | ) | JURY DEMAND |
| U.S. BANK, N.A., NATIONSTAR | ) | |
| MORTGAGE HOLDINGS, INC., | ) | |
| NATIONSTAR MORTGAGE LLC, | ) | |
| SHAPIRO & INGLE, LLP, WORLD WIDE | ) | |
| PROPERTY HUB LLC, AND GREGORY | ) | |
| GRIFFIN, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS**

Arguing that Plaintiff failed to allege that there was a pending modification application, valid modification agreement, unlawful discrimination, or that Defendants' actions violated the Real Estate Settlement Procedures Act ("RESPA"), Defendants, Nationstar Mortgage LLC, Nationstar Mortgage Holdings, Inc., and U.S. Bank N.A., move for Judgment on the Pleadings. (ECF No. 75.) Because the Court finds that Plaintiff has sufficiently pleaded all but three of her claims—one under RESPA, one related to unlawful ouster, and one requesting declaratory relief—Defendants' Motion is GRANTED IN PART AND DENIED IN PART.

**BACKGROUND**

This action arises out of Plaintiff Crystal White's ("White") alleged attempt to modify her home mortgage and the later foreclosure of her home. The operative complaint here is White's Second Amended Complaint. (ECF No. 59.) White was the mortgagor of the property

at 2964 Ridgeway Road, Memphis, Tennessee 38115 ("property"), and Defendant Nationstar Mortgage LLC ("Nationstar") serviced the mortgage. (ECF No. 59 at PageID 371–72.) White submitted what she claims to be a "facially complete loan modification application" on June 17, 2016,[1] and alleges that Nationstar failed to consider her "application" because of her race, violating federal statutes and regulations. (*Id.* at PageID 374–75.) Nationstar, through Shapiro as Substitute Trustee, sold the property in a foreclosure sale on September 12, 2017. (*Id.* at PageID 373.)

White alleges that foreclosure was improper because her "modification application was still pending" or the "modification was enforceable." (*Id.*) White also alleges that Shapiro conducted the foreclosure sale knowing her "application was still pending or had become enforceable." (*Id.*) As for Defendants World Wide Property Hub LLC ("World Wide") and Gregory Griffin ("Griffin"), White asserts they purchased the property, and that World Wide and Griffin wrongfully evicted her after the sale, by changing the locks on the house located on the property. (*Id.*)

White brings six counts against Defendants. First, she alleges defendants unlawfully foreclosed her home despite her having a "pending modification application." *See* 12 U.S.C. § 2605(k), 12 C.F.R. § 1024.41(b)(2)(i)(B), 12 C.F.R. § 1024.41(c), 12 C.F.R. § 1024.41(f)(2), 12

---

[1] This document is central to the case. Plaintiff refers to it as a "Modification Application," and attached it as Exhibit 1 to the original Complaint (ECF No. 1.) The document contains a "Summary of [White's proposed] Modified Mortgage" and one unsigned "cop[y] of the Modification Agreement." (ECF No. 1.) By contrast, Defendants assert this document is not a loan modification application. Instead, Defendants argue it is in fact an offer to enter into a Loan Modification Agreement sent to Plaintiff on April 6, 2016, in response to her previous application for loan modification submitted on December 19, 2015. (ECF No. 62-3 at PageID 443.) According to Defendants, this Modification Agreement expired on April 16, 2016, long before Plaintiff signed it and sent it to them. (ECF No. 76 at PageID 482–83, 489.) Meanwhile, Plaintiff never mentions the December, 2015, loan modification application.

2

C.F.R. § 1024.41(g)(1)–(2), and 12 C.F.R. § 1002.9. In that same count she also alleges unlawful race and gender discrimination. *See* 15 U.S.C. § 1691, 42 U.S.C. §§ 1981–1982, and 42 U.S.C. § 3605. Second, she alleges Defendants unlawfully foreclosed her home in spite of there being "an enforceable modification agreement." *See* 12 C.F.R. § 1024.41(f)(1). Third, she alleges that Defendants World Wide Property Hub LLC and Gregory Griffin unlawfully ousted her. Tenn. Code Ann. §§ 66-28-504 and 66-28-513. Fourth, she seeks a declaration voiding the foreclosure auction and sale. Fifth, she asserts Defendants World Wide Property Hub LLC and Gregory Griffin violated the Fair Housing Act. 42 U.S.C. §§ 1981, 3617; 24 C.F.R. §100.400(c)(5). Finally, she seeks statutory damages under RESPA. 12 U.S.C. § 2605(f).

## STANDARD OF REVIEW

Defendants seek judgment in their favor under Federal Rule of Civil Procedure 12(c). After the pleadings close, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). A court analyzes a motion under Rule 12(c) as it would for a motion under Rule 12(b)(6). *See Thomas & Betts Intern. LLC v. Burndy LLC*, 2015 WL 5944387 at *1 (W.D. Tenn. 2015). Thus, to survive a motion under Rule 12(c), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017).

Federal Rule of Civil Procedure 8 governs the contents of a complaint. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although the complaint need

3

not contain detailed factual allegations, a plaintiff's "bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court "must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Though a court will certainly grant a motion for judgment on the pleadings if a plaintiff has no plausible claim for relief, a court must also "construe the complaint in [a] light most favorable to the plaintiff." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). In other words, a court will "accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." (*Id.*)

## DISCUSSION

### I. White Sufficiently Alleged that Her Modification Application was Pending at the Time of Foreclosure.

White asserts that Defendants' conduct related to the foreclosure of White's property violated a series of state and federal foreclosure statutes. *See* 12 U.S.C. § 2605(k), 12 C.F.R. § 1024.41(b)(2)(i)(B), 12 C.F.R. § 1024.41(c), 12 C.F.R. § 1024.41(f)(2), 12 C.F.R. § 1024.41(g)(1)–(2), and 12 C.F.R. § 1002.9. Defendants counter that White's complaint is defective because she never submitted an "enforceable Modification Agreement." (ECF No. 76 at PageID 483, 489.) Defendants also assert "[b]ecause Plaintiff failed to accept the modification

offer by timely returning her Modification Agreement, no contract or application was pending at the time of foreclosure . . . and Plaintiff's claims are thus moot." (ECF No. 76 at PageID 484.)

In paragraph nine of her Second Amended Complaint (and elsewhere), White takes two distinct positions about the legal significance of the June 17, 2016, document. White alleges she submitted a "facially complete loan modification application" to Nationstar. (ECF No. 59 at PageID 371–72.) She also contends that she "submitted payment (with that document) to render the modification[2] enforceable," and that she was "at all times qualified for the approval of her loan application." (*Id.* at PageID 372.) She claims Nationstar pointed to no deficiencies with the modification application in a letter Nationstar sent her on October 26, 2016. (ECF No. 59 at PageID 372); (*see* ECF No. 1-2 at PageID 28.) And so Plaintiff asserts her modification application was still pending when the Defendants foreclosed on her house. (ECF No. 59 at PageID 373.) As a result, Defendants could not lawfully proceed with foreclosure unless the loan servicer addressed the "application." (ECF No. 59 at PageID 375); *see* 12 C.F.R. § §1024.41(f)–(g). Because Defendant never addressed the pending application Plaintiff argues the foreclosure here was wrongful. (*Id.*)

Defendants argue that the document White sent on June 17, 2016 is not a modification application at all. (ECF No. 76 at PageID 482–83.) Instead, they say it is a modification agreement sent to her in response to her December, 2015, loan modification application. (*Id.* at

---

[2] RESPA "prohibits, among other things, a loan servicer from foreclosing on a property in certain circumstances if the borrower has submitted a complete loan modification, or loss mitigation application." *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 296 (6th Cir. 2015). "A loan modification agreement . . . legally alters a borrower's obligations under the original loan agreement . . . [by] reduc[ing] a borrower's monthly payments over the remainder . . . of the loan term." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1316 (11th Cir. 2018). A "loss mitigation application" is an "an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for evaluation for a loss mitigation option." 12 C.F.R. § 1024.31.

PageID 482.) Because she signed it and submitted it after the deadline provided, according to Defendants, the loan modification agreement is not enforceable. (*Id*.) Defendants never explain or argue that the document submitted on June 17, 2016, was <u>not</u> a facially valid modification application. Instead, they insist it was not a valid loan modification <u>agreement</u>. (*Id*. at PageID 482–84.)

Viewing the evidence in the light most favorable to White, though, the Court finds that she sufficiently alleges that her modification application was pending at the time of foreclosure, which would preclude, among other things, foreclosure proceedings. *See* 12 C.F.R. § 1024.41(f)(2) ("If a borrower submits a complete loss mitigation application . . . a servicer shall not make the first notice or filing . . . for any judicial or non-judicial foreclosure process . . . ."); 12 C.F.R. § 1024.41(g)(1)–(2) ("If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing . . . servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale . . . .").

If proven true, Defendants would have also needed to notify White to acknowledge receipt of her modification application, then provide her mitigation options, or state there are none, and notify her of their intent to take any adverse action. *See* 12 C.F.R. § 1024.41(b)(2)(i)(B) (Notify the borrower in writing within 5 days . . . after receiving the loss mitigation application that the servicer acknowledges receipt . . . ."); 12 C.F.R. § 1024.41(c) ("Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower . . . ."); 12 C.F.R. § 1002.9 ("A creditor shall notify an applicant of action taken within . . . 30 days after receiving a completed application . . . .); 12 U.S.C. § 2605(k) (A servicer shall not "fail to take timely action to respond to a borrower's requests to . . . avoid[] foreclosure . . . .). In light of these statutory provisions,

6

White's assertion that there was a pending application states viable causes of action under these statutes.

II. **White has not Sufficiently Pleaded a Valid Modification Agreement Existed at the Time of Foreclosure.**

White also alleges that she entered into an "enforceable modification agreement" with Nationstar after June 17, 2016—the date she mailed the document at issue—because "Nationstar and US Bank accepted White's payments on the modified loan and ratified the modification." (ECF No. 59 at PageID 376–77.) White argues that, as a result, Defendants violated RESPA by foreclosing her home before she was 120 days delinquent on her payments. *See* C.F.R. § 1024.41(f)(1). Defendants assert there is no modification agreement because White did not sign the document by the April 16, 2016, deadline. (ECF No. 76 at PageID 482.) Defendants then argue White "was already delinquent" by April 16, 2016, and that Nationstar did not start the non-judicial foreclosure until August 9, 2017—well more than 120 days later. (ECF No. 76 at PageID 488–89.)

Of note, Plaintiff has offered no authority to support her contention that Defendant's acceptance of her payments constitutes acceptance or ratification of the modification agreement. On the contrary, "[t]he United States Court of Appeals for the Sixth Circuit has stated that '[u]nder the principles of contract law, [accepting an] offer after its expiration is considered a counteroffer . . . . Tennessee courts have held similarly.'" *Batesville Casket Co. v. Formtek Grp.*, No. 4:11-CV-65, 2012 WL 12883238, at *5 (E.D. Tenn. Aug. 28, 2012) (quoting *United States v. Graham*, 278 F. App'x 538, 546 (6th Cir. 2008)). This court is unaware of any court in Tennessee, though, that has addressed whether the acceptance of an overdue installment payment for an underlying debt along with a counteroffer constitutes acceptance or ratification of that counteroffer.

7

*Raptis v. Bank Of Am., N.A.*, is instructive. No. 310089, 2013 WL 3032295, at *1 (Mich. Ct. App. June 18, 2013). Here, the plaintiff applied for a home loan modification, received a modification offer from the bank, but did not send her acceptance of the offer, along with payment, until after the offer expired. *Raptis*, 2013 WL 3032295 at *2. The court found that the bank's "acceptance of [the] subsequent payment is not . . . [evidence] that defendant was agreeing to the modification as opposed to accepting payment as required under the original agreement," because plaintiff failed to show "that there was a *mutual agreement to modify* the original contract." *Id.* (emphasis added). Like Michigan, "Tennessee law also requires credible evidence of *mutual agreement to modify* the contract's terms." *Am.'s Collectibles Network, Inc. v. MIG Broad. Grp., Inc.*, 330 F. App'x 81, 88 (6th Cir. 2009) (emphasis added).

Here, the offer document from Nationstar says on its face that it expired after April 16, 2016. (ECF No. 1-1 at PageID 14.) White did not sign the document until June 15, 2016. (ECF No. 59 at PageID 371.) White, therefore, made Nationstar a counteroffer rather than accepting Nationstar's offer. Even though White alleges that Nationstar accepted her payment that accompanied her counteroffer, she does not allege any facts suggesting that Nationstar intended to modify the underlying home mortgage. Because of that, White has not sufficiently pleaded that she and Nationstar entered into an enforceable modification agreement. And White has not alleged she was less than 120 days delinquent on the underlying home loan. The Court, thus, dismisses her claim under C.F.R. § 1024.41(f)(1).

### III. White has Sufficiently Alleged Discrimination Claims Under 15 U.S.C. § 1691, 42 U.S.C. § 3605, and 42 U.S.C. §§ 1981–1982.

White contends that Nationstar's "failure to consider or evaluate White's modification application constitutes a violation of" 15 U.S.C. § 1691, 42 U.S.C. §§ 1981–1982, and 42 U.S.C. § 3605. The Court will analyze these claims individually. (ECF No. 59 at PageID 374.)

8

### A. White has Sufficiently Pleaded Claims Under 15 U.S.C. § 1691 and 42 U.S.C. § 3605.

The Equal Credit Opportunity Act ("ECOA") found at 15 U.S.C. § 1691 "prohibits creditors from discriminating against any credit applicant 'with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex, or marital status.'" *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 876 (6th Cir. 2002) (citing 15 U.S.C. § 1691(a)(1)). To state a claim for such a violation, White must allege that (1) she is a member of a protected class; (2) she applied for credit from Nationstar; (3) she was qualified to obtain credit; and (4) Nationstar denied her credit application. *Id.*

Defendants argue that White's claim should fail because she has not identified how Nationstar "was aware of her race" or how she identified "similarly situated white male applicants who received modifications." (ECF No. 76 at PageID 485.) To survive a motion for judgment on the pleadings, though, White need not prove the validity of her allegations, but only that they are "plausible on [their] face." *Iqbal*, 556 U.S. at 662 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff has alleged that (1) she is African-American; (2) she applied to Nationstar for a home loan modification; (3) she was qualified for the loan modification; and (4) Nationstar denied her loan modification because of her race. (ECF No. 59 at PageID 375–76.) To be sure, Plaintiff could be more specific but, at this stage of the litigation, the Court finds thisclaim under ECOA passes muster.

Defendants also argue that the Court should dismiss White's Fair Housing Act claim under 42 U.S.C. § 3605 because she failed to demonstrate that her alleged injuries are "fairly traceable" to Nationstar's conduct so she lacks constitutional standing. (ECF No. 76 at PageID 488–89); *see City of Memphis v. Wells Fargo Bank, N.A.*, No. 09-2857-STA, 2011 WL 1706756, at *4 (W.D. Tenn. May 4, 2011). This argument is not persuasive. White's alleged injury—that

Defendants wrongfully foreclosed on her home—occurred because of Nationstar's "transmission and publication of the Notice of Trustee's sale to continue the non-judicial foreclosure process while White's (alleged) modification application was pending . . . ." (ECF No. 59 at PageID 372.) For purposes of this Motion, then, the Court finds that White has sufficiently alleged constitutional standing for the claim.

### B. White has Sufficiently Stated a Claim Under 42 U.S.C. §§ 1981–1982.

Defendants next argue that White's claims under 42 U.S.C. §§ 1981–1982 of the Civil Rights Act should be dismissed because White does not allege "racial animus." (ECF No. 76 at PageID 487–88.) "A § 1982 claim, like a claim under § 1981, requires that a plaintiff plead racial animus." *Moniz v. Cox*, 512 F. App'x 495, 501 (6th Cir. 2013). Put differently, "one must allege intentional racial discrimination." *Id*. Defendants rely heavily on *Patulski v. Twp. of Stronach*, when the court granted summary judgment because the plaintiff had no evidence that the defendant intentionally discriminated against him. 41 F.3d 1507 (6th Cir. 1994). But unlike *Patulski*, White alleges that Nationstar, "motivated by racial and gender animus," failed to evaluate her modification application while extending modifications "to similarly situated male borrowers and similarly situated Caucasian borrowers." (ECF No. 59 at PageID 375–76.) And, Patulski involved summary judgment, while here, the Court only evaluates the pleadings.

Most importantly, though, Defendants do not attack White's claim that they discriminated against her because she is a woman, which also violates these statutes. White has, therefore, sufficiently stated claims of both racial and gender discrimination under these statutes.

**IV. The Court Dismisses White's Request for Declaratory Relief Voiding the Foreclosure Auction and Sale, Because She has Named no Defendant Against Whom the Relief is Sought.**

Plaintiff asserts in count four that Defendants' violations of RESPA and ECOA entitle her to declaratory relief. (ECF No. 59 at PageID 379.) Defendants contend that White's request for declaratory relief as to the auction and sale of her property, should be dismissed because Plaintiff does not direct the allegation against any of the defendants. (ECF No. 76 at PageID 491.) In the alternative, Defendants argue that, if the Court finds the claim is directed at Nationstar, the Court should dismiss the claim because the parties had not entered into an "enforceable modification agreement." (*Id.* at PageID 483.)

Defendants are partially right. "'[A] declaratory judgment action is a procedural device used to vindicate substantive rights.'" *Int'l Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997) (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)). Even if the Court agrees with Defendants about the lack of a modification agreement (*see supra* Part II), White has sufficiently pleaded the existence of a loan modification application for her substantive claims, along with some of her discrimination claims. Thus, her declaratory relief claim is not subject to dismissal for that reason. At the same time, however, the Court cannot discern against whom Plaintiff is seeking this relief and, for that reason, the claim fails. The Court therefore, dismisses the request for declaratory relief.

**V. The Court Finds White Sufficiently Pleaded Her Claim for Statutory Damages Under RESPA.**

White alleges she is entitled to statutory damages under RESPA because Nationstar engaged in a "pattern and practice of noncompliance with RESPA" and that she has suffered actual damages. (ECF No. 59 at PageID 380–82.) But defendants argue this claim should be dismissed because she has not sufficiently pleaded her underlying RESPA claims. (ECF No. 76

11

at PageID 491.) Defendants also argue that White has not pleaded this claim with sufficient specificity. (*Id.*) The statutory provision provides that "[w]hoever fails to comply with any provision of [RESPA] shall be liable to the borrower for . . . any additional damages, as the court may allow, in the case of a *pattern or practice* of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1) (emphasis added). In *Marais v. Chase Home Fin. LLC*, the Sixth Circuit found a complaint was sufficiently well-pleaded when it only alleged that the defendant "engaged in a pattern or practice of non-compliance" and suffered "actual damages." 736 F.3d 711, 722 (6th Cir. 2013). Plaintiff here alleges little more than the bare minimum, but that is sufficient. As a result, White's allegation that she suffered actual damages because Nationstar engaged in a "pattern and practice of noncompliance with RESPA," is sufficiently well-pleaded. (ECF No. 59 at PageID 380–82.)

VI.     **The Court Dismisses White's Unlawful Ouster Claim Against U.S. Bank.**

White alleges that World Wide Property Hub LLC and Gregory Griffin, separate defendants, unlawfully ousted White in violation of §§ 66-28-504 and 66-28-513 of the Tennessee Land Lord Tenant Act. (ECF No. 59 at PageID 378–79.) White, by her own admission, inadvertently alleged that U.S. Bank also violated this statute. (ECF No. 79 at PageID 504.) This Court, therefore, dismisses the unlawful ouster claim as against U.S. Bank only.

## **CONCLUSION**

For the reasons noted above, this Court GRANTS in Part and DENIES in Part the Motion for Judgment on the Pleadings. The Court DISMISSES the RESPA claim in count two under C.F.R. § 1024.41(f)(1), the unlawful ouster claims in count three against all Defendants except World Wide and Griffin. *See* Tenn. Code Ann. §§ 66-28-504, 66-28-513. Finally, the Court DISMISSES the claim for declaratory relief in count four. These Dismissals are WITHOUT

12

PREJUDICE. For all other claims, the Court DENIES the motion because it finds that Plaintiff's Complaint contains "sufficient factual matter" to "state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Engler*, 862 F.3d at 575.

**SO ORDERED**, this 26th day of October, 2018.

s/ Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE